## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JULIUS HEARNS,

      Petitioner,

v.                                        Case No. 4:19cv28-RH-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner Julius Hearns has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 8). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 14). Hearns replied. (Doc. 16). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Hearns is not entitled to habeas relief.[1]

## I.    Background and Procedural History

      The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 14, Ex. B (trial transcript)). James Smith, the victim in this case, lived on Flat Creek Road on the outskirts of Chattahoochee,

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Florida. On January 9, 2012, Smith was returning home from volunteer work at 11:45 a.m., when he noticed a car—a dark blue Saturn—parked illegally on the shoulder of the road outside his home. Smith parked in his driveway and walked to the front porch, but stopped when he heard a noise at the left side of his house. Smith walked to that side of the house and did not see anything unusual, but as he returned to the front porch, his dog approached and "appeared as though he had been whipped or something. He wasn't acting normal." (Ex. B at 67). Suspicious that someone might be in the house, Smith knocked on the front door as if he were a visitor. When no one answered, Smith unlocked the door and walked inside. Smith saw several of his firearms lined up on the kitchen floor. Smith then heard noises of people rummaging through rooms to his left and his right.

Smith retrieved a loaded shotgun from a nearby cabinet, positioned himself in the entryway to the kitchen, and "hollered at them that it's all over with, come on out." (Ex. B at 76). The rummaging noise stopped to "dead silence." Smith yelled the warning again, but received no response.

Smith went outside with his shotgun, positioned himself in the front yard inside his fence running along Flat Creek Road where the Saturn was parked, and called 911. Smith read the license plate number of the Saturn to the 911 dispatcher.

Hearns and his co-defendant, Shon Thomas, ran out of Smith's house toward a wooded area and then into a ditch. Hearns was wearing a green shirt, and Thomas

was wearing a light brown shirt. When Hearns reached the ditch, he crouched down, took aim at Smith, and fired two shots with a Taurus .38 caliber Spesco revolver he stole from Smith's home.

Hearns and Thomas then made their way toward Smith and the blue Saturn. When they reached within 50-60 yards of Smith, Hearns took aim at Smith again, but before he could fire, Smith shot at Hearns. The shot fell short. Hearns positioned himself near a pine tree, took aim and fired another shot at Smith, but missed him.

Hearns eventually made his way back to the blue Saturn, crawled into the driver's seat, turned and pointed the gun once more at Smith, and drove off. Hearns picked up Thomas nearby, who got in the back seat on the passenger side. Hearns sped off, leaving three of Smith's stolen firearms along the roadway (Smith's Taurus .38 Spesco revolver, Smith's Jennings 9 mm Bryco pistol, and Smith's Mountain Eagle .22 caliber pistol).

By that time, law enforcement was en route. Gadsden County Sheriff's Deputy Clay Joyner responded to the 911 dispatch in his patrol vehicle with emergency lights and siren activated. Approximately one mile from Smith's residence, Joyner entered a curve in the road and met Hearns head on driving in Joyner's lane of traffic. Hearns had entered the curve from the opposite direction driving 70-80 miles per hour, lost control, and veered into the oncoming lane of traffic. Joyner swerved off the road to avoid Hearns hitting him, then turned around

and pursued Hearns. Hearns fled Joyner at high speed, reaching 100 miles per hour at times. Deputies Dick Locke, John Dolan, and Robert Maxwell joined the pursuit in their individual patrol vehicles. Hearns continued to flee the officers at between 85 and 100 miles per hour along the winding road until he eventually lost control and crashed into a wooded area. Deputies removed Hearns from the driver's seat of the Saturn, and Thomas from the back seat. Deputies seized, from Hearns's pants pockets, two magazines for Smith's Jennings 9 mm Bryco pistol and jewelry belonging to Mrs. Smith. The Jennings Bryco pistol had been stored in a filing cabinet in the middle bedroom of Smith's home along with the Mountain Eagle .22 caliber pistol.

Deputies searched the area near Smith's home, and seized the three stolen firearms Hearns and Thomas discarded along the road. The deputies recovered the Jennings 9 mm Bryco pistol and the Mountain Eagle .22 pistol. A passerby driving along Flat Creek Road found the Taurus .38 Spesco revolver and brought it to Deputy Jackson who was searching nearby. Deputy Hooks found a spent projectile from the Taurus .38 Spesco revolver in Smith's front yard.

At Hearns's trial, Smith identified Hearns as the man in the green shirt who fled toward the woods, shot at him, and drove the dark blue Saturn getaway car. Smith identified Thomas as the man in the light brown shirt who fled with Hearns. Smith also identified the three firearms that Hearns had stolen: the Taurus .38 Spesco

revolver Hearns had used to shoot at him, the Jennings 9 mm Bryco pistol, and the Mountain Eagle .22 pistol.

At his trial, four sheriff's deputies identified Hearns as the driver of the Saturn who fled from them at a high rate of speed and whom they pulled from the driver's seat of the Saturn. Deputies also identified the green University of Miami shirt Hearns was wearing. In addition, the deputies identified Thomas as the backseat passenger who was wearing a light brown shirt.

In Gadsden County Circuit Court Case No. 2012-CF-46, Hearns was charged by amended information with 21 counts: Attempted Felony Murder (Count 1); Burglary of a Dwelling Armed with a Firearm (Count 2); Possession of a Firearm by a Convicted Felon (Count 3); Felony Fleeing or Attempting to Elude a Law Enforcement Officer (Counts 4-6); Fleeing or Attempting to Elude a Law Enforcement Officer (Counts 7, 8); Grand Theft of a Firearm (Counts 9-20); and Grand Theft from a Dwelling (jewelry) (Count 21), (Doc. 14, Ex. A at 28-31).[2] Prior to trial, the State elected not to pursue Count 8. (Ex. B at 3-4). The trial court bifurcated the charge of Possession of a Firearm by a Convicted Felon (Count 3). (Ex. A at 37).

---

[2] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 14). If a page of an exhibit bears more than one page number, the court cites the Bates Stamp number appearing at the bottom center of the page.

Hearns was tried with Thomas and found guilty as charged of Attempted Felony Murder; Burglary of a Dwelling with a Firearm; Felony Fleeing an Officer (three counts); Fleeing an Officer; and Grand Theft from a Dwelling. (Ex. A at 95-102). The jury made special findings that Hearns actually possessed and actually discharged a firearm during the commission of the Attempted Felony Murder and Armed Burglary of a Dwelling. (*Id*. at 95-96). Concerning the Grand Theft of a Firearm charges, Hearns was found guilty as charged on three counts (theft of the Taurus Spesco revolver, the Mountain Eagle pistol, and the Jennings Bryco pistol), and guilty of the lesser included offense of Petit Theft on the remaining nine counts. (*Id*. at 97-100).

The trial court adjudicated Hearns guilty and sentenced him as a prison releasee reoffender to concurrent terms of life in prison on Counts 1 and 2 with respective 20 and 25-year mandatory minimum terms of imprisonment. On the remaining offenses, the trial court sentenced Hearns to various concurrent terms of imprisonment, the longest being 15 years of imprisonment.[3] (Ex. A at 116-128 (judgment and sentence)). A few months after sentencing, Hearns entered an *Alford*

---

[3] Hearns was sentenced to 15 years of imprisonment for each Felony Fleeing an Officer conviction (three counts). Hearns was sentenced to 5 years of imprisonment for the Fleeing an Officer conviction, each Grand Theft of a Firearm (three counts), and the Grand Theft from a Dwelling (jewelry). Hearns was sentenced to "time served" for each Petit Theft (nine counts). (Ex. A at 116-128 (judgment and sentence)).

plea to the Felon in Possession of a Firearm charge and was sentenced to 3 years of imprisonment with a 3-year mandatory minimum term of imprisonment, to be served concurrent with his other terms of imprisonment.[4] (Doc. 1 at 5; Doc. 14, Ex. G at 478); The Florida First District Court of Appeal ("First DCA") affirmed on May 29, 2014, *per curiam* and without written opinion. *Hearns v. State*, 139 So. 3d 303 (Fla. 1st DCA 2014) (Table) (copy at Ex. F).

On June 1, 2015, Hearns filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. G at 476-520). The state circuit court denied relief after an evidentiary hearing. (*Id*. at 539-660 (evidentiary hearing transcript), 685-691 (written order)). The First DCA affirmed *per curiam* and without written opinion. *Hearns v. State*, 253 So. 3d 547 (Fla. 1st DCA 2018) (Table) (copy at Ex. K). The mandate issued October 17, 2018. (*Id*.).

On January 11, 2019, Hearns, *pro se*, filed his original federal habeas petition, which he later amended. (Docs. 1, 8). Hearns's amended petition raises six grounds of ineffective assistance of trial counsel. (Doc. 8). The State asserts that Hearns is not entitled to relief because one claim is procedurally defaulted, and none of Hearns's claims meet the rigorous standard for habeas relief. (Doc. 14).

---

[4] "An Alford plea is a guilty plea where the defendant maintains a claim of innocence to the underlying criminal conduct charged but admits that sufficient evidence exists to convict him of the offense." *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1273 (11th Cir. 2014) (citing *North Carolina v Alford*, 400 U.S. 25, 37-38 (1970)).

## II.      Relevant Legal Principles

### <u>Section 2254 Standard of Review</u>

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata

rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## <u>Clearly Established Federal Law Governing Claims of Ineffective Assistance</u>

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show that: (1) his counsel's performance was constitutionally deficient; and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168. The two-part test articulated in *Strickland*, *supra*, applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 566 U.S. at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134 (2012) (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52 (1985) (applying *Strickland*'s two-part test to defendant's challenge to guilty plea based on ineffective assistance of counsel).

In the context of plea negotiations, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.  Discussion

**Ground One**    **"Trial Counsel was Ineffective in failing to Move for Severance from the Co-Defendant under Bruton and/or Florida Law In Violation of Fourteenth Amendment To The United States Constitution." (Doc. 8 at 10).**

Hearns claims that trial counsel, Tracy Record, was ineffective for failing to move to sever his trial from that of his co-defendant, Thomas. Hearns alleges that

counsel knew that Thomas made a post-arrest statement to police placing all the blame on Hearns and denying any knowledge of Hearns's plan to burglarize the Smith's home. Hearns claims that Thomas's statement and his related defense provided a viable basis for severance. Hearns concedes that Thomas's statement was not introduced at trial, however, and he identifies no evidence admitted at his trial that would have been excluded had the trails been severed. Nevertheless, Hearns argues that he suffered prejudiced by the joint trial, because Thomas's counsel disclosed the essence of Thomas's post-arrest statement during opening and closing arguments:

> Prejudice resulted when Thomas did not testify at Trial and Hearns' attorney was unable to refute the attorney's argument; she could not call Thomas to the stand and impeach him, nor his attorney. The unimpeached statements urged the Jury to find that Hearns not only was present inside the house, but acted with criminal intent and fired at the homeowner. The statements carried the odd credibility possessed only by an eyewitness who himself was involved with the charged crime. The statements supported the State's case theory that there were two (and not three) individuals involved in the burglary, and that Hearns was both the driver and the shooter.

(Doc. 8 at 11).

The parties agree that Hearns presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Hearns briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 8 at 9; Doc. 14 at 14).

Page 15 of 41

The State argues that Hearns is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 14 at 14-29).

### A.    State Court's Decision

Hearns presented this claim to the state courts as Ground One of his Rule 3.850 motion. After an evidentiary hearing, the state circuit court denied relief for these reasons:

> The defendant alleges in Ground 1 that trial counsel was ineffective by failing to Move for Severance from the Co-Defendants [sic] under Bruton and/or Florida Law. Under the standard set out in Strickland vs. Washington, 477 US 668, 104 S.Ct. 2052, 80 L. Ed2d 674 (1984) and Johnston vs. Tucker, 70 So.3d 472, in order for a Defendant to prevail in an ineffective assistance of counsel claim he must satisfy two requirements. First, a defendant must show that counsel's action or omissions were deficient and, second, the deficiency established must further be shown to have affected the proceeding that confidence in the outcome is undermined.

> A review of the Court file, testimonies given at the evidentiary hearing on Defendant's Motion and the relevant case law on the matter, the Court finds that the proper course of action for trial counsel would have been to file a written Motion to Sever on Defendant's behalf. Therefore, the Court finds that the Defendant has satisfied the first prong of the Strickland vs. Washington test. The court therefore must assess whether Defendant's claim satisfy the second prong of Strickland, to wit, whether Defense counsel's deficient performance affected the proceeding such that confidence in the outcome was undermined. To this end, the Court must rely upon the record before it and the evidence introduced at trial independent of the codefendant statements which would have sustained a conviction.

> The physical evidence against the Defendant was overwhelming. Eyewitness testimony placed the Defendant at the crash site of the vehicle used in the burglary. Additionally upon being seized, the defendant had in his possession a number of items taken from the

victims home which belonged to the victim. The Court does not find that the Defendant is able to establish the second prong of Strickland, namely that he was prejudiced because of defense counsel's ineffectiveness. **Therefore Ground One is DENIED**.

(Ex. G at 685-686) (typographical errors in original). The First DCA summarily affirmed. (Ex. K).

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Hearns's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the

last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

There is no merit to Hearns's argument that the state court's decision was contrary to clearly established federal law. (Doc. 16 at 4). The state court utilized the *Strickland* standard, and the facts of Hearns's claim are not materially indistinguishable from any Supreme Court case where the Court deemed *Strickland*'s prejudice prong was satisfied. To warrant habeas relief, Hearns must show that the state court's application of *Strickland*'s prejudice prong was unreasonable.[6] Hearns fails to make that showing.

The state court concluded that Hearns failed to establish there was a reasonable probability the result of his trial would have been different had he been tried separately from Thomas. That conclusion is reasonable. A separate trial would not have changed the State's eyewitness testimony and physical evidence that (1) Hearns was inside the Smith's home where he stole firearms, ammunition and jewelry; (2) Hearns armed himself with firearms during the burglary; (3) Hearns shot at Smith during the burglary with one of the firearms he stole; (4) Hearns got in the driver's seat of the getaway vehicle and fled the scene; (5) Hearns drove the getaway vehicle at high speed to elude law enforcement officers attempting to apprehend him;

---

[6] Hearns does not argue that § 2254(d)(2) applies.

(6) Hearns was extracted from the driver's seat of the getaway vehicle after it crashed; and (7) Hearns had ammunition and jewelry from the Smith's home in the pockets of his pants.

True, had their trials been severed, the jury would not have heard Thomas's counsel's arguments. But Hearns has not demonstrated that there is a reasonable probability that Thomas's counsel's statements affected the jury's verdict. The jury was instructed, more than once, that an attorney's statements during opening and closing arguments were not evidence, were not to be considered evidence, and that the verdict must be based solely on evidence. (Ex. A at 41-42 (preliminary instructions), 92-93 (final instructions)). This court presumes that the jury followed the judge's instructions, as there is no evidence to the contrary. *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).

Because a fairminded jurist could agree with the state court that the likelihood of a different outcome at a severed trial is not substantial, Hearns is not entitled to habeas relief on Ground One.

### **Ground Two**      **"Trial Counsel was Ineffective in plea negotiations." (Doc. 8 at 11).**

Hearns alleges that a few days before trial, the State offered him a "plea deal" entailing 20 years of imprisonment. Hearns claims that he rejected the offer based on Attorney Record's affirmative misadvice that: (1) the absence of gunshot residue on Hearns's hands would exonerate him completely from all charges involving

actual possession and discharge of a firearm; (2) the absence of any of Hearns's fingerprints on any of the firearms involved in the burglary would exonerate him completely from all charges involving firearms; and (3) the State was required to prove actual possession of a firearm in order to convict Hearns of Attempted Felony Murder, Armed Burglary, and Grand Theft of a Firearm. (Doc. 8 at 11). Hearns asserts that had counsel provided "timely and correct advice on the elements of the offenses and a reasonable assessment of his chances of success at Trial, he would have accepted the State's offer of 20 years." (*Id*. at 12).

The parties agree that Hearns presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Hearns briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 8 at 21-22; Doc. 14 at 30). The State argues that Hearns is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 14 at 30-34).

## A.    State Court's Decision

Hearns presented this claim to the state courts as Ground Two of his Rule 3.850 motion. The state circuit court rejected the claim for these reasons:

> The Defendant alleges in Ground 2 that trial counsel was ineffective in plea negotiations. This assertion is conclusively refuted by the record. The testimony of Defense counsel as well [as] the testimony of the Defendant completely refuted the notion that the Defendant was willing to accept the plea offer tendered by the State. The Defendant stated emphatically that he would not accept "nothing"

because he was innocent of the charges. **Therefore Ground Two is DENIED**.

(Ex. G at 686-687). The First DCA summarily affirmed. (Ex. K).

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Hearns's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's final order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Hearns has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (holding that the AEDPA "affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)). This deference extends to the state court's determination that the evidentiary hearing testimony of Hearn's attorney was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas

review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Hearns's trial attorney, Tracy Record, testified at the evidentiary hearing that the prosecutor, Frank Allman, "did not make a plea offer in this case." (Ex. G at 556). Record explained:

> It was his [Allman's] position that on these types of cases that what he wanted defense counsel to do is discuss with my client what plea agreement would be acceptable to my client, and then go to him with that number. And then he would run it up the flag pole with the victim and make a determination whether or not that was something that the state attorney's office was willing to accept.

(*Id*.). Record testified that she "begged" Hearns to consider plea bargaining, because she knew he faced a mandatory life sentence if convicted at trial and also knew that the State had a strong case. (*Id*. at 558). Record even contacted Hearns's parents to solicit their help in encouraging Hearns to consider a plea agreement. (*Id*. at 558, 562-63). Hearns, however, was adamant about exercising his right to a trial, "refuse[ed] to accept any kind of plea," and maintained his innocence throughout the case. (*Id*. at 556-567). Shortly before trial, hoping that Hearns would be receptive to a plea agreement, Record approached Allman to see if he was receptive to an agreement that would entail Hearns serving 20 years in prison. (*Id*. at 563). Record described: "I went to Frank and said what about 20. And I think he talked to Mr.

Smith and they were willing to do 20 but Mr. Hearns wasn't accepting the plea." (*Id*.). Hearns felt that the proposed sentence was akin to a life sentence. (*Id*. at 595). Record explicitly denied giving Hearns the "misadvice" he attributes to her. (*Id*. at 563-564).

Hearns admitted at the postconviction evidentiary hearing that he refused defense counsel's efforts to negotiate a plea agreement. (*Id*. at 650) ("She [Defense Counsel] never came to me—the only thing she ever came, what would you take. I'm not going to take nothing, I'm innocent. She's basically saying what would you take.").

Given defense counsel's testimony, which the state court credited, the state court's rejection of Hearns's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Hearns is not entitled to habeas relief on Ground Two.

> ### Ground Three    "Trial Counsel was Ineffective during closing argument, failing to object to improper comments that deprived Hearns of a fair trial." (Doc. 8 at 14).

Hearns alleges that during closing arguments, Prosecutor Frank Allman improperly ridiculed the defense theory of the case, and Thomas's attorney (Craig Brown) improperly vouched for Mr. Smith's credibility. Hearns faults trial counsel for failing to object. (Doc. 8 at 14-15). Hearns asserts that had counsel objected and

sought a curative instruction or mistrial, the outcome of his trial would have been different. (*Id*. at 15).

The parties agree that Hearns presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Hearns briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 8 at 23; Doc. 14 at 14). The State argues that Hearns is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 14 at 14-29).

### A.    State Court's Decision

Hearns presented this claim to the state courts as Ground Three of his Rule 3.850 motion. The state circuit court rejected the claim for these reasons:

> The Defendant alleges in Ground 3 that trial counsel was ineffective during closing argument for failing to object to improper comments that deprived Hearns of a fair trial. Additionally the Defendant alleges that trial counsel was ineffective for failing to object to the codefendant attorney "vouching" for the truthfulness of the victim in the case.

> The Court accepts Defense Counsel's explanation that she did not object to the comments made by the prosecutor during closing argument as reasonable trial strategy and therefore not subject to second guessing by the Court. It is entirely reasonable that Defense attorney would surmise that to object and make an issue of the prosecutor's comments would be to invite additional unwarranted attention to what had already been said. Notwithstanding, the Court finds that the outcome of the proceeding was not affected by the failure of Defense attorney to object to comments of the prosecutor in light of the overwhelming evidence introduced at trial that supported the Defendant's conviction.

With respect to the attorney for the co-defendant vouching for the veracity of the victim during closing argument the Court finds the proper course of action for trial counsel would have been to interpose an objection. Therefore, the Court finds that the defendant has satisfied the first prong of the <u>Strickland vs. Washington</u> test. Again, the Court finds the physical evidence against the Defendant was overwhelming supporting the Defendant's conviction that trial counsel's deficiency did not affect the outcome of the proceeding. The Court does not find that the Defendant is able to establish the second prong of Strickland, namely that he was prejudiced because of defense counsel's ineffectiveness. **Therefore Ground Three is DENIED**.

(Ex. G at 687-688) (typographical errors in original). The First DCA summarily affirmed. (Ex. K).

## B.      Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Hearns's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA's unexplained decision adopted the same reasoning as the circuit court. *Wilson*, 138 S. Ct. at 1192.

As with Ground Two, this court defers to the state court's factual findings, because they are amply supported by the record and because Hearns has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo*, 664 F.3d at 845. This deference extends to the state court's determination that Attorney Record's evidentiary hearing testimony was credible. *Id*.

The prosecutor's comment concerned Hearns's defense witness, William Dean. Dean testified that he was housed with Thomas at the Gadsden County Jail and that Thomas told him: (1) he (Thomas) committed the burglary of Smith's home, (2) Hearns was not involved in the burglary, and (3) Thomas was driving the getaway car after the burglary and picked up Hearns after the burglary. (Ex. B at 403-06). During closing argument, Prosecutor Allman commented: "And folks, I submit the best thing about William Dean's testimony, is that his pants didn't actually burst into flames while he was on the stand." (*Id*. at 536). Hearns faults trial counsel for failing to object.

Attorney Brown's comment concerned Mr. Smith's testimony. During closing argument, Brown urged the jury to find that only Hearns was involved in the burglary. Brown commented:

> What he [Smith] said was this—and I believe Mr. Smith. He is honest. I believe everything he says. But there's plenty of reasonable doubt as to burglary. . . . Mr. Smith says that he heard simultaneous noises coming from room, bedroom, bedroom. Right here. And then he indicates that he jacked the shot, and then it all became quiet.
>
> Ladies and gentlemen, what Mr. Smith most likely heard was one person in one room.

(Ex. B at 552).

Attorney Record testified at the postconviction evidentiary hearing that the prosecutor's comment was buried within a lengthy closing argument, that it did not strike her as improper or objectionable, and that she felt it was more effective to

counter it in her own closing argument than to emphasize it, without answering it, by objection. (Ex. G at 568-570 (Record's evidentiary hearing testimony); Ex. B at 586-87 (Record's counter-closing argument)). Hearns has not shown that counsel's strategic decision was a course no competent counsel would have taken. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000); *see also Craig v State*, 510 So. 2d 857, 865 (Fla. 1987) ("When counsel refers to a witness or a defendant as being a "liar," and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration. There was no impropriety."). The state court reasonably determined that Hearns failed to satisfy *Strickland*'s performance prong concerning Record's failure to object to the prosecutor's comment.

The state court also determined, reasonably, that Hearns failed to show that he was prejudiced by Record's lack of objection to the respective comments by the prosecutor and Attorney Brown. Given the overwhelming evidence—which established that Hearns was the burglar in the green shirt who fired a weapon at Smith and drove the getaway car—Hearns failed to show there was a reasonable probability the result of his trial would have been different had counsel objected to

the two isolated comments during closing arguments. In Record's words, "Mr. Hearns was caught redhanded," and "his defense just did not bear out in any way, shape, or form, you know, impossible." (Ex. G at 620- 621).

The state court's rejection of Hearns's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. *See, e.g., Sims v. Singletary*, 155 F.3d 1297, 1309 (11th Cir. 1998) (holding that petitioner failed to establish that he was prejudiced by counsel's lack of objection to prosecutorial comments and argument that vouched for witnesses' credibility; considering the overwhelming evidence of petitioner's guilt, including five eyewitnesses identifying him during trial as a participant in the murder/robbery, the prosecutor's comments did not prejudice the trial). Hearns is not entitled to habeas relief on Ground Three.

| **Ground Four** | **"Hearns is entitled to a new trial based on erroneous and unobjected-to Misleading Jury Instructions and verdict Form on Attempted Felony Murder and Armed Burglary, or in failing to move for a judgment of acquittal on count I based on the "intentional act" language as charged." (Doc. 8 at 15).** |
|---|---|

Hearns claims that Attorney Record was ineffective for failing to object to the jury instructions and verdict form concerning Attempted Felony Murder and Armed Burglary, because they were confusing and misleading. (Doc. 8 at 15-17). Hearns also faults counsel for failing to request Florida's "Legally Interlocking Counts" instruction, and for failing to request instructions on Category One and Category Two lesser included offenses of Attempted Felony Murder. (*Id.* at 17-18). Hearns

adds that counsel also failed to move for a judgment of acquittal on the Attempted Felony Murder charge. (*Id*.).

The State asserts a procedural default defense based on Hearns's abandonment of this claim in his postconviction appeal. (Doc. 14 at 35-36).

### A.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must fairly present his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A claim that was not properly exhausted and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal habeas review. *Boerckel*, 526 U.S. at 839-40. A petitioner seeking to overcome a procedural default must "demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In Florida, when a defendant receives an evidentiary hearing on his Rule 3.850 postconviction motion, he is required to file an appellate brief. *See* Fla. R. App. P. 9.141(b)(3). Failure to address an issue in the initial brief constitutes waiver or abandonment of that issue, and renders it procedurally defaulted for purposes of federal habeas review. *Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that federal habeas petitioner, who received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order).

### B.    Hearns's Claim is Procedurally Defaulted

Hearns presented this claim to the state courts as Ground Four of his Rule 3.850 motion.[7] (Ex. G at 489-492). The state circuit court denied relief on the merits after an evidentiary hearing. (*Id*. at 688-89). Hearns appealed, but his counseled appellate brief did not raise this issue. (Ex. H). Hearns sought appellate review of only Grounds One, Two, Three, Five, and Six of his Rule 3.850 motion. (*Id*.). Hearns's abandonment of this claim in his postconviction appeal renders the claim procedurally defaulted. *Atwater*, 451 F.3d at 810; *see also Sims*, 155 F.3d at 1311

---

[7] Hearns did not raise these issues in his direct appeal. (*See* Ex. C).

(holding that petitioner's abandonment of his claim in his postconviction appeal rendered the claim procedurally barred for federal habeas purposes).

Hearns makes none of the requisite showings to excuse his procedural default. Hearns's procedural default bars federal habeas review of Ground Four.

**Ground Five**        **"Trial Counsel was Ineffective for failing to object to Hearns appearing in a leg shackle before the Jury, thus depriving Hearns of a fair trial." (Doc. 8 at 19).**

Hearns claims that during trial, he was restrained with a single-leg shackle without any judicial finding that shackling was necessary. Hearns alleges that he "was made to walk before the Jury with the shackle on his leg, and that the shackle made noises that were clearly audible in the Courtroom." (*Id.*)*.* Hearns also alleges that the shackle "discouraged his freedom of movement and his ability to assist his attorney and discouraged him from testifying on his own behalf because he could not rise from counsel table and walk to the witness stand." (*Id.*). Hearns faults trial counsel for (1) failing to object to the shackling before and during trial, (2) failing to make a record whether jurors saw or heard the shackle, and (3) failing to require that the State or the trial court make a particularized showing of need for shackling. (Doc. 8 at 19).

The parties agree that Hearns presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Hearns briefed the issue in his postconviction appeal; and that

the First DCA summarily affirmed without explanation. (Doc. 8 at 24-25; Doc. 14

at 42). The State argues that Hearns is not entitled to habeas relief because he fails

to meet § 2254(d)'s demanding standard. (Doc. 14 at 42-45).

### A.    State Court's Decision

Hearns presented this claim to the state courts as Ground Five of his Rule

3.850 motion. The state circuit court rejected the claim for these reasons:

> The Defendant alleges in Ground 5 that trial counsel was
> ineffective by failing to object to his appearing in a leg shackle before
> the Jury, thus depriving him of a fair trial. This claims [sic] involves the
> Court making conclusions of facts based upon the evidence presented
> during the evidentiary hearing. Defense counsel testified that she does
> not recall the Defendant in shackles before the verdict was reached by
> the Jury. She further testified that had the Defendant been restrain[ed]
> in a manner the Jury would have been able to see the restraints she
> would most certainly have objected. The Court finds defense counsel's
> version of the facts more credible and therefore accepts them.
> **Therefore Ground Five is DENIED**.

(Ex. G at 689). The First DCA summarily affirmed. (Ex. K).

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of

Hearns's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA's

unexplained decision adopted the same reasoning as the circuit court. *Wilson*, 138 S.

Ct. at 1192.

This court presumes that the state court's factual findings are correct, because they are amply supported by the record and because Hearns has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo*, 664 F.3d at 845. This deference extends to the state court's finding that Record's evidentiary hearing testimony was credible. *Id*.

Record testified that Hearns was not shackled during the trial; that Hearns always was seated at defense table (which was skirted) before any jurors entered the courtroom; and that the first time Hearns appeared in shackles in front of the jury was after it had reached a verdict. (Ex. G at 577-78, 607-609). Record confirmed that if Hearns had been shackled at any time prior to the verdict in a manner that was visible or audible, she would have objected. (*Id*. at 578).

Based on Record's testimony, it was reasonable for the state court to find that Hearns was not shackled—at least not in a manner that was perceptible to the jury—until after the jury reached its verdict. Hearns, therefore, failed to establish that Record performed deficiently and that he was prejudiced by counsel's conduct. Hearns is not entitled to habeas relief on Ground Five.

**Ground Six**    **"Trial Counsel was Ineffective for failing to seek suppression of the .38 revolver reportedly found by "an unknown Hispanic male." (Doc. 8 at 20).**

Hearns claims that Record should have moved to suppress the Taurus .38 Spesco six-shot revolver on the ground that the evidence did not sufficiently tie the

gun to him. In support, Hearns alleges that: (1) Deputy Jackson testified at deposition that he seized the gun from the Hispanic male and turned it over to Investigator McSwain, but McSwain's deposition testimony "denied contact with anyone out on Flat Creek Road who had recovered a gun;"[8] (2) Smith testified that his Taurus .38 Spesco revolver was loaded with five bullets, but the Taurus .38 Spesco revolver recovered from Flat Creek Road had only four rounds (three fired cartridge cases and one unfired ammunition component);[9] and (3) the Taurus .38 Spesco revolver recovered from Flat Creek Road was found by "an unknown Hispanic male." (Doc. 8 at 20).

Hearns claims that "[a]ll of this contradictory testimony and the lack of an identification of the 'unknown Hispanic male' shows that the gun was not tied to Hearns and should not have been used against him at Trial." (*Id*.). Hearns argues that trial counsel should have moved to suppress the revolver prior to trial, or at least

---

[8] Deputy Jackson also testified to those facts at trial. Investigator McSwain was not called as a witness at Hearns's trial. (Ex. B).

[9] Smith testified at trial that his Taurus .38 Spesco revolver was loaded with five rounds. (Ex. B at 116). Smith also testified that Hearns shot at him three times. (*Id*. at 81-91). The State's firearms expert, Josh Wright, testified at trial that the Taurus .38 Spesco revolver he received as evidence for analysis was bagged with three fired cartridges and one unfired ammunition component. (*Id*. at 234). The ammunition was a hydroshock-type caliber manufactured by Federal. Wright also analyzed the fired projectile recovered from Smith's front yard. (*Id*. at 234-41 (Wright's testimony), 365-368 (Deputy Hooks's testimony)). The fired projectile had the same class characteristics as the Taurus .38 Spesco revolver received as evidence, and was the same Federal hydroshock ammunition as the unfired round removed from that revolver. (*Id*. at 234-41).

called Investigator McSwain as a defense witness "to refute the chain of witnesses tying the gun to Hearns." (*Id.*).

The parties agree that Hearns presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Hearns briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 8 at 24-25; Doc. 14 at 47). The State argues that Hearns is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 14 at 47-50).

## A.    State Court's Decision

Hearns presented this claim to the state courts as Ground Six of his Rule 3.850 motion. The state circuit court rejected the claim for these reasons:

> The Defendant alleges in Ground 6 that trial counsel was ineffective by failing to seek suppression of the .38 revolver reportedly found by "an unknown Hispanic male". The Defense Counsel testified that she did not file a Motion to Suppress because she did believe [sic] there was a good faith basis to file said Motion. She further testified that she opted to argue to the jury that the law enforcement's investigation was shoddy as a strategy. The Court does not find that Defense Counsel's decision was outside that of the professional norm. Further, the Court finds that the evidence in the case was so overwhelming against the Defendant, the suppression of the firearm would not have affect [sic] the jury's verdict. **Therefore Ground Six is DENIED**.

(Ex. G at 689-690). The First DCA summarily affirmed. (Ex. K).

### B.   Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Hearns's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA's unexplained decision adopted the same reasoning as the circuit court. *Wilson*, 138 S. Ct. at 1192.

The state court credited Record's evidentiary hearing testimony. This court defers to that credibility determination and to the state court's remaining findings of fact because they are amply supported by the state court record. Attorney Record testified that she did not file a motion to suppress the .38 Spesco revolver because she did *not* believe there was a good-faith basis to suppress it. (Ex. G at 579-80).[10] Record's strategy was to raise reasonable doubt at trial about the State's ability to connect the revolver to Hearns, by emphasizing that the evidence was purely circumstantial and by attacking law enforcement's investigation as inadequate and inept. (*Id*.). A fairminded jurist could agree with the state court's conclusion that Record's decisions were reasonable.

Hearns has not shown that McSwain's deposition testimony provided a viable basis to suppress the revolver. Hearns suggests that McSwain contradicted Deputy

---

[10] The state court's order contains a typographical error, as noted above with "[sic]."

Jackson's testimony concerning the chain of custody of the .38 Spesco revolver recovered from Flat Creek Road, but the record does not bear that out.

Deputy Jackson testified at trial that he participated in the search near Smith's home and that he walked from Smith's residence down Flat Creek Road "[a]bout the quarter of a football field" to near the intersection of Eddie Williams Road. While searching that area, a Hispanic male gave Jackson a Taurus .38 Spesco revolver and reported that he found it in the road. Jackson wrote down the man's name, took the revolver back to investigators, and turned the revolver over to Investigator McSwain. Jackson then returned to the intersection of Flat Creek Road and Eddie Williams Road to look for more evidence. (Ex. B at 216-219, 223-224; *see also* Ex. G at 500 (property receipt attached to Hearns's Rule 3.850 motion)).

Hearns claims that McSwain's deposition testimony "denied contact with anyone out on Flat Creek Road who had recovered a gun." It is unclear however, and Hearns leaves ambiguous, whether McSwain denied contact with the Hispanic male who found the gun in the roadway, or denied contact with Deputy Jackson, who seized the gun and brought it to investigators. Hearns did not call McSwain to testify at the postconviction evidentiary hearing and therefore failed to establish what her testimony would have been. Hearns's *speculation* that McSwain's testimony provided a viable basis to suppress the revolver or to impeach Jackson's trial testimony is insufficient to establish a *Strickland* violation. *See Zakrzewski v.*

*McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) ("To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the [suppression] claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence.") (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *see also Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that the petitioner offered "only speculation that the missing witnesses would have been helpful," which is insufficient to meet the petitioner's burden of establishing a *Strickland* violation); *Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 246 (11th Cir. 2010) (holding that petitioner's failure to adduce the proposed witnesses' testimony at the state evidentiary hearing "has reduced the claim of prejudice to mere speculation. . . . Federal habeas relief cannot follow such speculation. Proof is required.").

Hearns's remaining allegations of "contradictions" in the evidence go to the weight and sufficiency of the evidence, not admissibility of the .38 Spesco revolver. Record's trial strategy concerning the revolver was not objectively unreasonable. Record thoroughly cross-examined the law enforcement witnesses about the thoroughness of their investigation and chain of custody of evidence. (Ex. B). In closing statements, Record argued that law enforcement's investigation was

inadequate and that they "jumped to a conclusion about what happened," "seemed to ignore any evidence to the contrary," and "focused on solely supporting what they believe happened." (*Id*. at 565). Record also emphasized that there was no investigation of the Hispanic male who recovered the .38 Spesco revolver from the roadway to see if he was involved in the burglary. (*Id*. at 589-90). A fairminded jurist could agree with the state court's conclusion that a reasonable attorney could have acted, in the circumstances, as Record did.

The state court's rejection of Hearns's claim was not contrary to and did not involve an unreasonable application of *Strickland*'s performance standard.[11] Nor was the decision based on an unreasonable determination of the facts. Hearns is not entitled to habeas relief on Ground Six.

## IV.   A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

---

[11] Because Hearns's claim fails on *Strickland*'s performance prong, this Court need not address the state court's analysis of the prejudice prong. *See Strickland*, 466 U.S. at 697 (holding that the court may dispose of an ineffective assistance claim if the petitioner fails to carry his burden on either of the two prongs).

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation

by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The amended petition for writ of habeas corpus (Doc. 8), challenging the judgment of conviction and sentence in *State of Florida v. Julius Hearns*, Gadsden County Circuit Court Case No. 2012-CF-46, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>22nd</u> day of July, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**